No. 20,647.

D. R. GRIFFITH, *Appellee*, v. THE ATCHISON, TOPEKA & SANTA
FE RAILWAY COMPANY, *Appellant*.

### SYLLABUS BY THE COURT.

1. RAILROADS— *Passenger— Injuries— Satisfaction— Question for Jury.*
The facts touching the settlement and satisfaction of a claim for
damages by an injured railway passenger examined and held to pre-
sent a fair question for a jury.

2. SAME—*Passenger Injured in Switch Yards—Direction of Yardmaster.*
Where a person is traveling on a freight train, and it is necessary
for him to walk between railroad tracks in a switch yard to change
trains and to reach the caboose in which he is to continue his journey,
it is not negligence for the yardmaster to direct him to go alone down
through the switch yard at night.

3. SAME—*Injuries in Switch Yards—Negligence of Engine Crew.* Where
a person is walking between the tracks of a switch yard under the cir-
cumstances outlined in paragraph 2 of the syllabus, and is injured by
an engine coming up behind him, it is sufficient to sustain a jury's
finding of the railway company's negligence when it is shown that the
engine crew did not keep a sufficient lookout, and were not even aware
of his presence, although he was carrying a lighted lantern as he met
and passed close by the engine.

Appeal from Wyandotte district court, division No. 3; HUGH
J. SMITH, judge. Opinion filed May 12, 1917. Affirmed.

*William R. Smith, Owen J. Wood, Alfred A. Scott,* and *Har-
low Hurley,* all of Topeka, for the appellant.

*David F. Carson,* of Kansas City, and *J. E. Crawford,* of
Eskridge, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The plaintiff recovered judgment against the
defendant for injuries sustained by him in the Santa Fe rail-
way switch yard at Atchison. He was en route from Hiawatha
to Eskridge, traveling by a freight train on a shipper's pass,
and accompanying a carload of his live stock and household
goods. He and his car journeyed to Atchison over the Missouri
Pacific, where it was necessary to change to the Santa Fe. As
the freight train which was to take him and his car to Esk-

ridge was coming into the yards at Atchison from the east, about ten o'clock at night, he was directed by the yardmaster to walk eastward between the track on which the freight train was approaching and another parallel track about eight or nine feet distant on the north.

The purpose of sending the plaintiff in that direction was that he might reach the caboose in which he was to ride. As he walked eastward he passed an engine standing on the track at his left, and the freight train was moving westward on his right. The plaintiff was carrying a lantern, and was keeping some distance from the moving freight train passing him on his right, and he was somewhat too close to the track on his left, when, without any warning heard by the plaintiff, the engine which he had passed on his left was started eastward; it overtook and struck him, knocked him down, and dragged him for some distance. He was bruised severely and variously. He was assisted into the caboose by the defendant's employees, and later taken to an Atchison hospital. Next day he came to the defendant's hospital in Topeka in company with the defendant's claim agent. There he signed certain papers settling and releasing any claim which he might have against the railroad company, for the sum of fifteen dollars; after which he departed for his home, and some months later he brought and successfully maintained this action.

The defendant contended below and still contends that he was injured through his own negligence and without the fault of the defendant, and that he had settled and released any claim which he might have had against the railroad company, and had been paid in full therefor.

To overcome the plea of satisfaction and release, the plaintiff alleged that the defendant's claim agent deceived him, falsely and fraudulently representing to him that he would not be permitted to leave the hospital nor to go home until he had signed the papers, and represented that the papers related to his release from the hospital; that the plaintiff at the time was suffering great agony in body and mind from his injuries, and incapable of transacting business, all of which the claim agent well knew; and that the claim agent told him that the fifteen dollars was merely to pay his way home, and that the receipt which he was induced to sign was

merely an acknowledgment of the money furnished by the company for that purpose, and that he never had possession of the papers and did not read them and that their true import was never explained to him.

The plaintiff's evidence touching the execution of the papers and the payment of the fifteen dollars was in harmony with his pleading, and the jury chose to believe him, although the contract of settlement and release for his damages sustained and the acknowledgment of receipt of fifteen dollars in full satisfaction thereof contained a recital written by the plaintiff himself, in a clear, legible, businesslike handwriting:

"I have read the above voucher, receipt and release and fully understand the same.                              D. R. GRIFFITH."

The special findings harmonized with the plaintiff's evidence on this phase of the lawsuit. Appellant argues with considerable force that the settlement and release were valid and binding; but a majority of the court are not disposed to attach much weight to these "hurry-up" settlements of damage claims for trifling considerations, and are of opinion that all the facts surrounding the transaction of settlement and satisfaction presented a fair question for the jury and that its determination may not be disturbed.

Turning then to appellant's contention that the plaintiff's injuries were caused solely by his own negligence, the jury found:

"10. If you find that the defendant was guilty of any negligence that caused the injury to the plaintiff, then state fully of what that negligence consisted. Answer. 1st. In that the yardmaster directed plaintiff to go alone down through the yard at night. 2d. That the engine crew did not keep sufficient lookout."

The court inclines to the opinion that the first proposition upon which the jury based the defendant's negligence is not good, but that the latter, "that the engine crew did not keep a sufficient lookout," may pass muster. There was no negligence on the part of the yardmaster in directing the plaintiff to go alone down through the yard at night. Freight trains must run at night, and they must stop where their work is to be done, and this may be anywhere throughout the wide areas of a modern railroad switch yard. They can not be expected to stop at station platforms, and our statute

specifically excuses them from stopping thereat even to permit passengers to get aboard. It reads:

"That all freight trains to which a caboose is attached shall be obliged to transport, upon the same terms and conditions as passenger trains, all passengers who desire to travel thereon and who are above the age of fifteen years, or who, if under fifteen years, are accompanied by a parent or guardian or other competent person, but no freight train shall be required to stop to receive or discharge any passenger at any other point other than where such freight train may stop; nor shall it be necessary to stop the caboose of such trains at the depot to receive and discharge passengers; provided, that on such trains the railroad companies shall only be liable for their gross negligence; and provided further, that this act shall not be construed to apply to freight trains on main lines, the most of which train shall be composed of cars loaded with live stock." (Gen. Stat. 1915, § 8536.)

The path down which the yardmaster directed the plaintiff was about five feet wide in the clear between the engine and the freight train after allowing the maximum estimate for the projection of the vehicles on each side of the tracks. There was plenty of safe space between the tracks and between the engine and the freight train for one familiar with railroad freight yards, and a man who is traveling by freight trains, where a change of railroads in a switch yard at night must be made, is necessarily assumed to have sufficient familiarity with such circumstances and surroundings that he will not lose his presence of mind and thereby get into danger and be injured, and this verdict could not stand on the first ground of negligence named by the jury. But the second finding of negligence, "that the engine crew did not keep sufficient lookout," seems sufficient to sustain the verdict. The plaintiff testified:

"I had a lighted lantern in my arm. I proceeded east . . . The engine pulling the train that I was to board was coming. . . . The engine to this train passed me west bound . . . It is between eight and nine feet between the rails. I passed another engine on the way down before I was hurt. It was the switch engine. There was a man on the side next to me looking out of the cab. The engine was headed west in a direction opposite to that which I was going. The man was looking west. I passed right under him. The engine was standing still. . . . When I passed this man there I had a lantern on my left arm. I had it about fifty-four feet or steps past that engine before I was hurt.

"Q. What happened when you got about that point, fifty-four or six steps down there? A. I know I was hit down by something.

Griffith v. Railway Co.

"Q. .What was that something that hit you down?   A. That switch engine.

"When I passed this engine it was right behind.   I did not hear any bell rung or whistle blown.  . . .   The engine was standing at a water crane when I passed it.   I saw one man looking down from the cab when I passed the engine.   He was looking west the opposite direction from which I was going."

Part of defendant's evidence logically harmonizes with plaintiff's evidence and with the jury's second finding of negligence.   The engineer and fireman of the engine which struck the plaintiff testified that they did not see the plaintiff—not even as he came towards them carrying a lantern.   The fireman testified:

"When we were standing there I was sitting on the left side of the engine, the south side.   I did not see the plaintiff or anybody with a lantern pass my engine going east.   I was looking west.   As we got ready to start east I was ringing the bell and looking back east, the direction we were going.   I did not see anybody on or near the track."

As the engine men without the slightest effort could have discovered the plaintiff as he came towards them and passed them with his lighted lantern, the court can not disturb the jury's finding that the engine crew did not keep a sufficient lookout.   This finding fairly implies that the engine crew did not warn the plaintiff.   A majority of the court hold that there was a duty to keep this lookout, and to warn the plaintiff, and the judgment is affirmed.

BURCH, J., dissents.

DAWSON, J. (dissenting) : I am of opinion that the plaintiff's injuries were caused almost entirely by his own negligence; I think the statute quoted in the opinion governs the company's duty to a passenger traveling by freight trains, and that the defendant was not guilty of gross negligence.   I therefore dissent.

PORTER, J., concurs in this dissent.